UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

AULTON DANIEL GOBEN, III,

                Plaintiff,

v.

COUNTY OF KENT et al.,

                Defendants.

_____/

Case No. 1:25-cv-17

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by county detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Kent County, Vital Core Health Strategies, Unknown Parties named as Inmates John Does #1–3, and the following KCCF staff: Deputy Sheriffs/Correctional Officers Unknown Sutton, Unknown Iacaboni, Unknown Dingman, Unknown Shaverlier, Unknown Dominguez, Unknown Dunham, and Unknown Party #1 named as John Doe; Physician Unknown Party #2

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

named as Jane Doe; and Nurse Unknown Party #3 named as John Doe. (Compl., ECF No. 1, PageID.2–4.) Plaintiff sues Defendants Deputy Sheriffs/Correctional Officers Dominguez and Unknown Party #1 in their individual capacities only; he sues all other Defendants in their individual and official capacities. (*Id.*)

In Plaintiff's complaint, he alleges that "on or about October 31st, 2024," Defendant Sutton used "the intercom" and stated: "You're about to be f[*****] up."[2] (*Id.*, PageID.5.) At some unspecified time on this same day, Plaintiff alleges that Defendant Inmate John Doe #1 "committed harmful contact to [Plaintiff's] nose causing great bodily harm crushing [Plaintiff's] nose and causing internal bleeding on [Plaintiff's] brain due to [Plaintiff] being punched multiple times in [his] central nervous system." (*Id.*) Plaintiff claims that Defendant Inmate John Doe #1 "breached his contract agreement [per KCCF] Handbook when he battered/assaulted [Plaintiff]." (*Id.*)

Further, Plaintiff alleges that the "mentioned deputies did not protect [him] from this battery/assault and took [Plaintiff] to the disciplinary unit despite [Plaintiff] not being able to defend [him]self from the attack." (*Id.*) Plaintiff states that he was "visibly bleeding from [his] nose and there was blood on [the cell's] windows, walls, and carpet, but deputies deprived [Plaintiff] of reasonable medical attention by locking [Plaintiff] in the cell on D1A." (*Id.*) Plaintiff claims that "the battery would not have happened if [not for] the policy for [KCCF]'s morning clean up custom to release bottom deck and top deck inmates out together." (*Id.*)

Plaintiff claims that Defendant Nurse Unknown Party #3 "failed to properly assess [Plaintiff's] injuries when he wait[ed] about a half hour to speak with [Plaintiff] through the crack of a cell door while [Plaintiff] was bleeding from the nose and internally on the brain." (*Id.*,

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

PageID.5–6.) Plaintiff alleges that "the same acts were also repeated by [Defendant] Physician Jane Doe [(Unknown Party #2)] after the nurse in which both of the Vital Core Health Strategies were hard to comprehend." (*Id.*, PageID.6 (grammar and phrasing in original retained).) Plaintiff also alleges that "due to Vital Core Health Strategies' custom of allowing correctional deputies to make important decisions regarding the seriousness and/or non-serious injuries of inmates[] said actions were done under color of law . . . ." (*Id.*) Plaintiff states that he was not transported to the hospital until approximately four hours "after the incident," and he "was taken by deputies who had [him] in full body restraints." (*Id.*) Plaintiff claims that "the hospital that [he] was taken to informed [him] that [he] was supposed to be immediately transported in an ambulance and that [he] could have died from the internal bleeding." (*Id.*)

On December 23, 2024, Plaintiff alleges that Defendants Inmates John Does #1–3 "battered/assaulted" him "inside of [his] cell," and he alleges that these inmates "breached their []KCCF[] Handbook duty." (*Id.*, PageID.6, 7.) Plaintiff claims that "before the incident took place, Shaverlier stated, 'Do you want to go to war,' through [Plaintiff's] cell's intercom." (*Id.*, PageID.6.) Plaintiff alleges that Defendants "Shaverlier, Sutton, or Dunham did not protect [him] from the battery/assault or contact a nurse for medical attention." (*Id.*, PageID.6–7.) Plaintiff also alleges that Defendants Dominguez and Unknown Party #1 "breached their duty to get [Plaintiff] medical attention," explaining that "both deputies had spoken to the deputies responsible beforehand, and they all s[aw] that [Plaintiff] was visibly bleeding on the floor, carpet, and door of [the] housing unit." (*Id.*, PageID.7.) Plaintiff claims that two days prior to the December 23, 2024, incident, he overheard Defendant Inmate John Doe #2 say that "Shaverlier asked him to perform the mentioned battery/assault," but Plaintiff "did not know at the time that [he] was the target being discussed." (*Id.*) Plaintiff also overheard Defendant Inmate John Doe #2 say that "he

'did not want to perform the task' and Shaverlier had threatened to [sic] something to his 'people(s)' if he did not perform the task." (*Id.*) Plaintiff states that he believes "the imminent danger that [he] is in is retaliation for a[n] incident with Kent Deputies on a previous detention." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Fourteenth Amendment to the United States Constitution, as well as under state law. (*See id.*, PageID.5–7.) Additionally, the Court construes Plaintiff's complaint to raise a First Amendment retaliation claim. Plaintiff seeks "compensatory, consequential, nominal, and punitive damages." (*Id.*, PageID.8.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Defendants Unknown Parties named as Inmates John Doe #1–3

As noted above, to state a claim under § 1983, the plaintiff must allege that a person acting under color of state law committed the constitutional deprivation at issue. *See West*, 487 U.S. at 48; *Street*, 102 F.3d at 814. Therefore, to the extent that Plaintiff seeks to bring any § 1983 claims against Defendants Unknown Parties named as Inmates John Doe #1–3, all of whom are fellow detainees, Plaintiff fails to state any such claims because Defendants Unknown Parties are not persons acting under color of state law. Accordingly, any § 1983 claims against Defendants Unknown Parties named as Inmates John Doe #1–3 will be dismissed for failure to state a claim.

## B.     Defendants Iacaboni and Dingman

As explained below, Plaintiff fails to allege sufficient facts showing how Defendants Iacaboni and Dingman were personally involved in the alleged violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff

must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff alleges that on October 31, 2024, Defendants Iacaboni and Dingman, along with Defendant Sutton, violated his rights under state law and the Fourteenth Amendment. (Compl., ECF No. 1, PageID.3.) Besides this conclusory assertion, Plaintiff alleges no facts about any specific conduct by Defendants Iacaboni and Dingman, let alone any unconstitutional conduct. (*See id.*) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And, "[s]ummary reference to a single, five-headed 'Defendants' [or deputies] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

Plaintiff refers to "deputies" in his complaint; however, this is insufficient to show that Defendants Iacaboni and Dingman were personally involved in the alleged violations of Plaintiff's constitutional rights. And, Plaintiff's claims against Defendants Iacaboni and Dingman fall far

short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, all of Plaintiff's claims against Defendants Iacaboni and Dingman will be dismissed for failure to state a claim.

### C.    Defendants Kent County and Vital Core Health Strategies, and Official Capacity Claims Against Individual Defendants

Plaintiff names Kent County and Vital Core Health Strategies as Defendants in this action, and he sues all Defendants, except Defendants Deputy Sheriffs/Correctional Officers Dominguez and Unknown Party #1, in their individual and official capacities. (Compl., ECF No. 1, PageID.2–4.)

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). That is, an official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Therefore, if Defendants are employed by Kent County, then an official capacity suit is treated as a suit against the county itself, and likewise if Defendants are employed by Vital Core Health Strategies, then an official capacity suit is treated as a suit against Vital Core Health Strategies itself.

A private entity, such as Vital Core Health Strategies, that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of

§ 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

As explained below, Plaintiff's allegations against Kent County and Vital Core Health Strategies essentially rest on a theory of vicarious liability and therefore do not state a claim. First, as to Kent County, Plaintiff claims that "the battery" by Defendant Inmate John Doe #1, which

occurred on October 31, 2024, "would not have happened if [not for] the policy for [KCCF]'s morning clean up custom to release bottom deck and top deck inmates out together." (Compl., ECF No. 1, PageID.3.) Although Plaintiff claims that there is a custom or policy regarding when inmates are released from their cells for "morning clean up," and apparently, he was attacked by another inmate during this time, Plaintiff presents no other facts to show that any custom or policy was *the moving force* behind his constitutional injury. Instead, Plaintiff simply relies on the existence of "morning clean up" in an attempt to hold Kent County liable. However, the fact that KCCF releases inmates for "morning clean up" does not, on its own, show that a custom or policy was the moving force behind any constitutional injury that occurs during that time. If this was the case, then any time a county detainee was attacked by another inmate, the county would be liable simply because the attack occurred at the county's correctional facility. But, these facts would be insufficient to state a claim against the county because a county may not be held vicariously liable for the individual acts of its employees. Moreover, Plaintiff alleges no facts to suggest that prior to the altercation, Plaintiff and Defendant Inmate John Doe #1 were housed on different housing units in order to keep them separate from each other.

As to Vital Core Health Strategies, Plaintiff alleges in a conclusory manner that "due to Vital Core Health Strategies custom of allowing correctional deputies to make important decisions regarding the seriousness and/or non-serious injuries of inmates[] said actions were done under color of law . . . ." (*Id.*, PageID.6.) However, the facts alleged by Plaintiff in the complaint do not support this conclusory assertion. Although Plaintiff claims that after the October 31, 2024, altercation, correctional staff at KCCF "deprived [Plaintiff] of reasonable medical attention by locking [Plaintiff] in the cell on D1A," and that after the December 23, 2024, altercation, correctional staff did not "contact a nurse for medical attention" (*id.*, PageID.6–7), these

11

allegations suggest that correctional staff did not even contact any medical personnel, not that medical personnel relied on the determinations of the correctional staff. Therefore, although Plaintiff alleges in a conclusory manner that Vital Core Health Strategies' custom was the moving force behind his injuries, the *facts* alleged by Plaintiff show that it was the actions of the correctional staff that resulted in any injury, not a policy or custom of Vital Core Health Strategies. *See Iqbal*, 556 U.S. at 678; *cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

Accordingly, for these reasons, Plaintiff fails to state a claim against Kent County, Vital Core Health Strategies, and the individual Defendants in their official capacities.

### D.    First Amendment Retaliation Claims

Plaintiff states that he believes "the imminent danger that [he] is in is retaliation for a[n] incident with Kent Deputies on a previous detention." (Compl., ECF No. 1, PageID.7.) The Court construes this allegation to raise First Amendment retaliation claims against Defendants.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's retaliation claim fails at the first step because he does not allege that he engaged in any protected conduct prior to any alleged adverse action. Plaintiff states that he believes "the imminent danger that [he] is in is retaliation for a[n] incident with Kent Deputies on a previous detention," however, Plaintiff alleges no facts about this prior "incident." (Compl., ECF No. 1, PageID.7.) Because Plaintiff alleges no facts about the prior "incident," he necessarily fails to show that this "incident" constituted protected contact. Instead, Plaintiff merely alleges the ultimate fact of retaliation, and his "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, any intended First Amendment retaliation claims will be dismissed for failure to state a claim.

### E.     Failure-to-Protect Claims and Medical Care Claims

Plaintiff claims that Defendants violated his Fourteenth Amendment rights, and the Court construes Plaintiff's complaint to raise failure-to-protect and medical care claims.

As an initial matter, although Plaintiff states that he is bringing Fourteenth Amendment claims, Plaintiff does not indicate whether he is a pretrial detainee or a convicted prisoner.[3] Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise

---

[3] It appears that Plaintiff was likely on parole when he allegedly committed the offense for which he is detained. *See* Mich. Dep't Corr. Inmate Locator, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=699554 (last visited Mar. 13, 2025); *see also* KCCF Inmate Locator   https://eisjailviewer.kentcountymi.gov/Home/BookingSearchQuery_KCSOMI   (enter "Goben" for "Last Name," enter "Aulton" for "First Name," select "Search") (last visited Mar. 13, 2025).

of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted). The application of the proper constitutional right depends on the nature of plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Because Plaintiff does not specify the nature of his custody, the Court considers Plaintiff's claims under both the Eighth and Fourteenth Amendment standards.

An Eighth Amendment claim has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the inmate must show that he faced a sufficiently serious risk to his health or safety. *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834). The subjective component requires an inmate to show that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Id.* Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee

must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

However, *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592. Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to show deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596–97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Further, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong. *Cf. Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "*Brawner* left the 'objectively serious medical need' prong untouched"); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### 1.    Failure-to-Protect Claims

#### a.    October 31, 2024, Altercation

As to the October 31, 2024, altercation, Plaintiff claims that Defendant Sutton used "the intercom" and stated: "You're about to be f[*****] up." (Compl., ECF No. 1, PageID.5.) Then, at

some unspecified time on this same day, Plaintiff alleges that Defendant Inmate John Doe #1 "committed harmful contact to [Plaintiff's] nose causing great bodily harm . . . ." (*Id.*) Plaintiff alleges that the "mentioned deputies did not protect [him] from this battery/assault." (*Id.*)

As an initial matter, besides Defendant Sutton, Plaintiff fails to mention any other Defendant by name when setting forth the factual allegations for his failure-to-protect claim related to the October 31, 2024, altercation. And, as discussed above, Plaintiff's general reference to "deputies" "does not support a reasonable inference that each Defendant is liable . . . ." *Boxill*, 935 F.3d at 518.

Furthermore, as to Defendant Sutton, although not specifically articulated by Plaintiff, it appears that Plaintiff is attempting to connect Defendant Sutton's statement over the intercom to Defendant Inmate John Doe #1's assault. (Compl., ECF No. 1, PageID.5 (claiming that Defendant Sutton used "the intercom" and stated: "You're about to be f[*****] up" and that at some unspecified time on this same day, that Defendant Inmate John Doe #1 "committed harmful contact to [Plaintiff's] nose").) However, the *facts* alleged by Plaintiff are insufficient to show that Defendant Sutton had any knowledge of, or involvement in, Defendant Inmate John Doe #1's assault because, for example, Plaintiff alleges no facts about how Defendant Sutton allegedly facilitated this attack. Instead, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Accordingly, for these reasons, applying either the Eighth Amendment standard or the Fourteenth Amendment standard, Plaintiff's failure-to-protect claims against all Defendants regarding the October 31, 2024, altercation will be dismissed for failure to state a claim.

### b.    December 23, 2024, Altercation

Plaintiff alleges that on December 23, 2024, Defendants Inmates John Does #1–3 "battered/assaulted" him "inside of [his] cell." (*Id.*, PageID.6.) Plaintiff claims that "before the

incident took place, Shaverlier stated, 'Do you want to go to war,' through [Plaintiff's] cell's intercom." (*Id.*) Plaintiff also claims that two days prior to the December 23, 2024, incident, he overheard Defendant Inmate John Doe #2 say that "Shaverlier asked him to perform the mentioned battery/assault," but Plaintiff "did not know at the time that [he] was the target being discussed." (*Id.*, PageID.7.) Plaintiff also overheard Defendant Inmate John Doe #2 say that "he 'did not want to perform the task' and Shaverlier had threatened to [sic] something to his 'people(s)' if he did not perform the task." (*Id.*) Plaintiff alleges in a conclusory manner that Defendants "Shaverlier, Sutton, or Dunham did not protect [him] from the battery/assault." (*Id.*, PageID.6.)

With respect to Defendants Sutton and Dunham, besides Plaintiff's conclusory assertion that they, along with Shaverlier, "did not protect [him] from the battery/assault," Plaintiff alleges no *facts* about Defendants Sutton's and Dunham's involvement in the matter. Therefore, Plaintiff necessarily fails to show that Defendants Sutton and Dunham knew of any risk of harm to him, let alone that they knew of such a harm and disregarded it. Accordingly, applying either the Eighth Amendment standard or the Fourteenth Amendment standard, Plaintiff's failure-to-protect claims against Defendants Sutton and Dunham regarding the December 23, 2024, altercation will be dismissed for failure to state a claim.

As to Defendant Shaverlier, although Plaintiff has by no means proven his failure-to-protect claim, the Court will not dismiss Plaintiff's failure-to-protect claim against Defendant Shaverlier regarding the December 23, 2024, altercation on initial review.

### 2.    Medical Care Claims

#### a.    Medical Care Following the October 31, 2024, Altercation

Plaintiff alleges that after the October 31, 2024, altercation, he was "visibly bleeding from [his] nose and there was blood on [the cell's] windows, walls, and carpet, but deputies deprived [Plaintiff] of reasonable medical attention by locking [Plaintiff] in the cell on D1A." (*Id.*,

PageID.5.) Plaintiff claims that Defendant Nurse Unknown Party #3 "failed to properly assess [Plaintiff's] injuries when he wait[ed] about a half hour to speak with [Plaintiff] through the crack of a cell door while [Plaintiff] was bleeding from the nose and internally on the brain." (*Id.*, PageID.5–6.) Additionally, Plaintiff alleges that "the same acts were also repeated by [Defendant] Physician Jane Doe [(Unknown Party #2)] after the nurse in which both of the Vital Core Health Strategies were hard to comprehend." (*Id.*, PageID.6 (grammar and phrasing in original retained).) Plaintiff states that he was not transported to the hospital until approximately four hours "after the incident," and he claims that "the hospital that [he] was taken to informed [him] that [he] was supposed to be immediately transported in an ambulance and that [he] could have died from the internal bleeding." (*Id.*)

With respect to Plaintiff's reference to unnamed "deputies," this reference is insufficient to show that any of the named Defendants were involved in Plaintiff's receipt of medical care immediately following the October 31, 2024, altercation. Moreover, although Plaintiff faults Defendant Nurse Unknown Party #3 for waiting "about a half hour to speak with [Plaintiff]," Plaintiff alleges no facts about when Defendant Nurse Unknown Party #3 learned that Plaintiff required medical attention. (*Id.*) Plaintiff may have waited thirty minutes to be seen by medical personnel after the altercation, but he alleges no facts to suggest that Defendant Nurse Unknown Party #3 knew about Plaintiff's need for medical care and then delayed his provision of such medical care. Likewise, Plaintiff's vague allegation that "the same acts were also repeated by [Defendant] Physician Jane Doe [(Unknown Party #2)] after the nurse in which both of the Vital Core Health Strategies were hard to comprehend," (*id.* (grammar and phrasing in original retained)), is incomprehensible and insufficient to show that Defendant Physician Unknown Party #2 knew about Plaintiff's need for medical care and failed to provide it. Moreover, although

Plaintiff alleges that he was not transported to the hospital until approximately four hours "after the incident," Plaintiff alleges no facts about which individuals, let alone Defendants, were involved in the decision regarding his transfer to the hospital. Under these circumstances, applying either the Eighth Amendment standard or the Fourteenth Amendment standard, the facts alleged in the complaint are insufficient to state a claim against Defendants with respect to the medical care that Plaintiff received after the October 31, 2024, altercation.

### b.      Medical Care Following the December 23, 2024, Altercation

Plaintiff alleges that after the December 23, 2024, incident, Defendants Dominguez and Unknown Party #1 "breached their duty to get [Plaintiff] medical attention," explaining that "both deputies had spoken to the deputies responsible beforehand, and they all s[aw] that [Plaintiff] was visibly bleeding on the floor, carpet, and door of [the] housing unit." (*Id.*, PageID.7.)

Although this claim lacks specificity, taking Plaintiff's factual allegations as true and in the light most favorable to him, on initial review, the Court will not dismiss Plaintiff's medical care claims against Defendants Dominguez and Unknown Party #1 regarding their alleged failure to contact any medical personnel after the December 23, 2024, altercation.

### F.      State Law Claims

When setting forth his factual allegations, Plaintiff implies that in addition to his federal claims, he is bringing state law claims.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Here, Plaintiff's federal claims against Defendants Kent County, Vital Core Health Strategies, Sutton, Iacaboni, Dingman, Dunham, Unknown Party #2, Unknown Party #3, and Unknown Parties will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

Because Plaintiff continues to have pending federal claims against Defendants Shaverlier, Dominguez, and Unknown Party #1, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## Conclusion

For the foregoing reasons, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Kent County, Vital Core Health Strategies, Sutton, Iacaboni, Dingman, Dunham, Unknown Party #2, Unknown Party #3, and Unknown Parties will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Kent County, Vital Core Health Strategies, Sutton, Iacaboni, Dingman, Dunham, Unknown Party #2, Unknown Party #3, and Unknown Parties will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, all of Plaintiff's federal claims against remaining Defendants Shaverlier, Dominguez, and Unknown Party #1 *except* Plaintiff's individual capacity failure-to-protect claim against Defendant Shaverlier regarding the December 23, 2024, altercation, and individual

capacity medical care claims against Defendants Dominguez and Unknown Party #1 regarding Plaintiff's receipt of medical care after the December 23, 2024, altercation.

Plaintiff's individual capacity failure-to-protect claim against Defendant Shaverlier regarding the December 23, 2024, altercation, and individual capacity medical care claims against Defendants Dominguez and Unknown Party #1 regarding Plaintiff's receipt of medical care after the December 23, 2024, altercation remain in the case. Additionally, Plaintiff's state law claims against Defendants Shaverlier, Dominguez, and Unknown Party #1 remain in the case. Plaintiff's complaint will be served on Defendants Shaverlier, Dominguez, and Unknown Party #1.

An order consistent with this opinion will be entered.


Dated:    March 21, 2025                              /s/ *Maarten Vermaat*
                                                      Maarten Vermaat
                                                      United States Magistrate Judge