UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AULTON DANIEL GOBEN, III,

      Plaintiff,

v.

COUNTY OF KENT, et al.,

      Defendant.

_____/

Case No. 1:25-cv-00017

Hon. Robert J. Jonker
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment.  (ECF No. 61.)

Plaintiff – Kent County Jail inmate Aulton Daniel Goben – filed an unverified complaint under 42 U.S.C. § 1983 alleging that the remaining Defendants – Kent County Deputies Shavalier, Dominguez-Morales, and John Doe (now identified as Joe Proulx[1]) – violated his First Amendment, Fourteenth Amendment[2], and state law rights.  Goben alleges that Deputy Shavalier failed to protect him from an inmate

---

[1] Plaintiff filed his complaint on Jan. 6, 2026.  (ECF No. 1.)  On April 28, 2025, he filed a motion to amend his complaint (ECF No. 20), which the Court subsequently denied (ECF No. 31). Recently, Plaintiff filed a motion asking to amend his complaint simply by adding a party – Deputy Proulx.  (ECF No. 72.)  In a separate order, the undersigned will be granting this motion and ordering the U.S. Marshal Service mail a request for waiver of service to Proulx.

[2] In the screening opinion, the Court was unsure whether the Fourteenth Amendment, applicable to pretrial detainees, or the Eighth Amendment, applicable to those convicted of a crime, applied to Plaintiff.  Defendant represents that Plaintiff was detained because he committed an offense while he was on parole.  Accordingly, the Eighth Amendment applies because Plaintiff was not a pretrial detainee at the time of the alleged violations.

assault, and that Deputies Dominguez-Morales and Proulx failed to provide him with medical care after the altercation.

Defendants Shavalier and Dominguez-Morales filed a motion for summary judgment. For the reasons set forth below, it is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss them from this lawsuit.

## II. Factual Allegations

On March 21, 2025, this Court entered an opinion dismissing all claims except for claims arising out of an altercation on December 23, 2024. The Court previously summarized the facts as follows:

> On December 23, 2024, Plaintiff alleges that Defendants Inmates John Does #1–3 "battered/assaulted" him "inside of [his] cell," and he alleges that these inmates "breached their []KCCF[] Handbook duty." (*Id.*, PageID.6, 7.) Plaintiff claims that "before the incident took place, Shaverlier stated, 'Do you want to go to war,' through [Plaintiff's] cell's intercom." (*Id.*, PageID.6.) Plaintiff alleges that Defendants "Shaverlier, Sutton, or Dunham did not protect [him] from the battery/assault or contact a nurse for medical attention." (*Id.*, PageID.6–7.) Plaintiff also alleges that Defendants Dominguez and Unknown Party #1 "breached their duty to get [Plaintiff] medical attention," explaining that "both deputies had spoken to the deputies responsible beforehand, and they all s[aw] that [Plaintiff] was visibly bleeding on the floor, carpet, and door of [the] housing unit." (*Id.*, PageID.7.) Plaintiff claims that two days prior to the December 23, 2024, incident, he overheard Defendant Inmate John Doe #2 say that "Shaverlier asked him to perform the mentioned battery/assault," but Plaintiff "did not know at the time that [he] was the target being discussed." (*Id.*) Plaintiff also overheard Defendant Inmate John Doe #2 say that "he 'did not want to perform the task' and Shaverlier had threatened to [sic] something to his 'people(s)' if he did not perform the task." (*Id.*) Plaintiff states that he believes "the imminent danger that [he] is in is retaliation for a[n] incident with Kent Deputies on a previous detention." (*Id.*)

(ECF No. 11, PageID.33-34.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Failure to Protect

Goben alleges that on December 21, 2024, two days before the altercation, he overheard "inmate John Doe #2 inform the inmate that was in D1B next door to me in cell #4 that Shavalier asked him to perform the mentioned battery/assault, but I did not know at the time that I was the target begin discussed." (ECF No. 1, PageID.7) (cleaned up). Goben says that he heard John Doe #2 state "he did not

3

want to perform the task" but Deputy Shavalier had threatened his "people."   (*Id.*)

On December 23, 2024, Plaintiff asserts that Deputy Shavalier commented over the intercom, "Do you want to go to war."   (*Id.*, PageID.6.)   Goben alleges that he was "battered/assaulted" by inmates John Doe #2 and John Doe #3.   (*Id.*)

    A Kent County Sheriff's Office Incident Report summarizes what happened:

> INCIDENT:
> During morning cleanup, at approximately 0805, Inmate Goben was assaulted in his cell by Inmate Young and Inmate Dixon. Inmate Goben proceeded to grab a mop out of the cleaning supplies and broke the wooden handle over his knee. The pod was immediately locked down at this time. Goben began wielding the 2 pieces of mop handle and threatening Inmates Young and Dixon. Inmate Goben was given many verbal commands to lock down via the intercom but initially refused to do so. Deputy Proulx and Deputy Dominguez talked to Inmate Goben through the pod door for several minutes, successfully deescalating Inmate Goben and convincing him to lock down. Deputy Proulx and Dominguez were able to recover both pieces from the broken mop handle after Inmate Goben was secured in his cell. Inmate Goben was handcuffed and brought to the D1 corridor to be evaluated by medical. Inmate Goben was sent to the hospital to be cleared since his nose was already broken in another recent fight.

(ECF No. 62-1, PageID.224.)

Video of the incident confirms the summary of facts in the incident report.[3]

Inmates Young and Dixon were charged with assault of another inmate, and both admitted their guilt in the incident.   (*Id.*, PageID.225.)

---

[3]   Defendants have submitted three surveillance videos that depict the altercation and events that occurred after the altercation.   The videos do not have sound.

| NAME | DOB | HOUSING LOCATION | | |
|---|---|---|---|---|
| DIXON, OMARION JAVEN | 12/31/2004 | MJ*D1B*104*001 | | |
| VIOLATION CODE | VIOLATION DESCRIPTION | | | PLEA |
| V302 | ASSAULT ANOTHER INMATE | | | GUILTY |
| DETAILS | | | | |
| FINDINGS CODE | HEARING PIN | SANCTIONS 1 | SANCTIONS 2 | SANCTIONS 3 |
| GUILTY | | CR15 | | |
| FINDINGS | | | | |
| HEARING DATE | ACCEPTS ☐ | CLOSED DATE | ENTERED PIN | ENTERED NAME |
| | | | 13286 | SHAVALIER, ROSS |
| NAME | DOB | HOUSING LOCATION | | |
| YOUNG, LATRELL MALIK- | 02/22/2002 | | | |
| VIOLATION CODE | VIOLATION DESCRIPTION | | | PLEA |
| V302 | ASSAULT ANOTHER INMATE | | | GUILTY |
| DETAILS | | | | |
| FINDINGS CODE | HEARING PIN | SANCTIONS 1 | SANCTIONS 2 | SANCTIONS 3 |
| GUILTY | | CR15 | | |
| FINDINGS | | | | |
| HEARING DATE | ACCEPTS ☐ | CLOSED DATE | ENTERED PIN | ENTERED NAME |
| | | | 13286 | SHAVALIER, ROSS |

(*Id.*, PageID.227.)

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id*. at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

5

> confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837.  Thus, to support a claim that a prison official failed to protect a prisoner, two conditions must be satisfied: the inmate must show (1) that a substantial risk of harm was present, and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind.  *Reedy v. West,* 988 F.3d 907, 914 (6th Cir. 2021) ("An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'")

To support an Eighth Amendment claim, Plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect."  *Id.* at 165.  *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988).  An error of judgment does not subject a prison official to liability.  *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity).

As noted above, the court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in Plaintiff's favor.  A

review of the video shows that the altercation between inmates Goben, Dixon, and Young took place in a matter of seconds. Importantly, Dixon attests that he was not asked to assault or fight with Goben:

> 3. I was involved in an altercation with Aulton Goben on the morning of December 23, 2024.
> 4. I was not asked or told by another inmate to assault or fight with Aulton Goben.
> 5. I was not asked or told by Dep. Ross Shavalier or any other officer or staff member at the KCCF to assault or fight with Aulton Goben.
> 6. My fight with Aulton Goben was my own decision.

(ECF No. 62-3, PageID.231.)

And Young says that he was present during the altercation but was not asked to assault or fight with Goben:

> 3. I was present during an altercation between Aulton Goben and another inmate on the morning of December 23, 2024.
> 4. I did not attack or assault Aulton Goben.
> 5. I was not asked or told by any inmate at the KCCF to assault or fight with Aulton Goben.

(ECF No. 62-4, PageID.234.)

The only evidence that supports Goben's claim that Deputy Shavalier solicited inmates Dixon and Young comes from Goben. Goben asserts that he overheard John Doe #2 tell the inmate in the cell next to Goben that Deputy Shavalier wanted him to commit an assault. (ECF No. 1, PageID.7.) Goben acknowledged in his complaint that he did not know whom John Doe #2 was allegedly told to assault. Goben also presented a declaration of an alleged statement from Deputy Iacaboni:

7

> I Have Been Incarcerated At The Kent County Correctional Facility Since October 4, 2024. December 23, 2024; And Until January 3, 2025; I Was Housed In Unit D1A Cell 43, When Deputy Daniel Iacaboni Made A Statement On Audio/Visual Camera(s)., After I Said I Was Jumped On December 23, 2024; By Two Inmate(s), IS Because I Had A Personal Visit with Relative Talking About Filing A 1983 Federal Civil Claim, On December 22, 2024 At 7 Pm. Deputy Daniel Iacaboni States, We Set That Up/ It's All Facts, Laughing And Smiling While Making Adamant Claims. A Verbal Confession By Deputy Iacaboni; Can Be Heard Loud And Clear On Camera Incriminating Evidence Pertaining To The Above Incident.
>
> I Declare Under Penalty of Perjury That The Foregoing IS True And Correct. Executed At The Kent County Correctional Facility In Grand Rapids, Michigan, On June 29, 2025.

(ECF No. 76, PageID.299.) Neither of these pieces of evidence creates a genuine issue of material fact with respect to whether Deputy Shavalier solicited inmates Dixon and Young to assault Plaintiff.

Moreover, there exists no evidence that inmates Dixon or Young were going to harm inmate Goben or that they had made any threats toward Goben prior to the incident. Goben did not make a request for protection, nor did he indicate to any other deputy that he feared that he would be harmed or attacked by another inmate. (ECF No. 62-6, PageID.241-242 (affidavit of Lieutenant Knott who investigated the incident on behalf of the Kent County Correctional Facility).) Lieutenant Knott attests that:

> 6. Plaintiff filed no grievances or complaints against Deputy Ross Shavalier prior to the incident on December 23, 2024.
>
> 7. Plaintiff did not report to the KCCF the alleged statements in this case made by Deputy Shavalier to inmate "John Doe #2" on December 21, 2024.
>
> 8. Plaintiff did not report to the KCCF Deputy Shavalier's alleged statement to him, "Do you want to go to war?"
>
> 9. Plaintiff had not informed the KCCF of any threats made by Dixon or Young against him, or any other issues or concerns relating to Dixon or Young, prior to the incident on December 23, 2024.
>
> 10. The KCCF had no facts, information, or reason to believe that Dixon, Young, "John Doe #2" or "John Doe #3" posed a danger or risk to Plaintiff prior to the incident on December 23, 2024.

(*Id.*, PageID.242.) In the opinion of the undersigned, there exists no genuine issue of material fact with respect to Goben's Eighth Amendment failure to protect claim against Defendant Deputy Shavalier. Thus, Shavalier is entitled to summary judgment.

### V. Failure to Provide Medical Care

Goben says he was denied medical care by Deputy Dominguez-Morales. The evidence is clear that Goben was provided with medical care. Immediately after the incident, Goben was evaluated by medical personnel, and he was taken to the hospital for further evaluation:

> MEDICAL ATTENTION:
> Inmate Goben was taken to the hospital to be cleared since his nose was already broken in a previous incident. Inmate Young and Inmate Dixon were evaluated by Nurse Jess Ross and cleared to stay in D1A.

(ECF No. 62-1, PageID.224-225.)

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008). Where a prisoner challenges their treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, a prisoner must prove grossly inadequate care which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a

defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

Goben has presented no evidence showing that he was denied medical care. The evidence clearly shows otherwise. In the opinion of the undersigned, no genuine issue of material fact exists with respect to Goben's Eighth Amendment deliberate indifference claim against Defendant Deputy Dominguez-Morales. Thus, Dominguez-Morales is entitled to summary judgment.

## VI. Qualified Immunity

Alternatively, Defendants argue that they are entitled to dismissal of the complaint against them based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if

> the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018).

In the opinion of the undersigned, for the reasons set forth above, no genuine issue of material fact exists entitling Defendants to summary judgment. As such, Defendants are entitled to qualified immunity from liability.

### VII. State Law Claims

To the extent that Goben raises state laws claims against Defendants Shavalier and Dominguez-Morales it is recommended that the Court decline to exercise supplemental jurisdiction over his state law claims. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

If the Court adopts the undersigned's recommendation, it will dismiss all of Goben's federal law claims against Defendants Shavalier and Dominguez-Morales. The balance of the relevant considerations would therefore weigh against the exercise of supplemental jurisdiction.  As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction over Goben's state law claims against Shavalier and Dominguez-Morales.

### VIII.  Recommendation

It is respectfully recommended that the Court grant Defendants Shavalier and Dominguez-Morales's motion for summary judgment and dismiss them from this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    December 8, 2025                                                      /s/ *Maarten Vermaat*
                                                                            MAARTEN VERMAAT
                                                                            U.S. MAGISTRATE JUDGE